Dafro M. JEFFRIES, Plaintiff,

v.

HARRIS COUNTY COMMUNITY
ACTION ASSOCIATION et al.,
Defendants.

Civ. A. Nos. 74–H–1036, 75–H–318.

United States District Court,
S. D. Texas,
Houston Division.

Jan. 11, 1977.

Jesse R. Funchess, Houston, Tex., for plaintiff.

Ernesto Valdez, Houston, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL O. BUE, Jr., District Judge.

## I. FINDINGS OF FACT

### A. Introduction

1. Plaintiff is a 50-year old, black female citizen of the United States and of Houston, Harris County, Texas.

2. Defendants are: plaintiff's former employer, Harris County Community Action Association ("HCCAA"), a nonprofit, federally funded corporation created pursuant to the Economic Opportunity Act, 42 U.S.C. §§ 2796 et seq., to fulfill the purposes and directives established originally by the Office of Economic Opportunity (OEO) and to facilitate preparing local, economically disadvantaged citizens for community involvement in the private sector; C. B. Davis, the Chairman of the Board of Directors of HCCAA; Janet Walker, Vice-Chairman of the Board and Chairman of the agency's Personnel Committee; and Mario Silva, HCCAA's Acting Executive Director at all times pertinent to this suit.

3. Plaintiff has sued the defendants alleging that they have violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e et seq., by discriminating against her on the basis of race and sex in their policies of promotion, in violation of 42 U.S.C. § 2000e-2, and by ultimately terminating her employment in alleged retaliation for her having opposed allegedly unlawful employment practices, in violation of 42 U.S.C. § 2000e-3(a).

### B. Plaintiff's Prior Work Experience and Activities with HCCAA

4. Plaintiff was first employed by HCCAA in 1967 as Secretary to the Director of Programs. She was later promoted to Personnel Interviewer in 1970. Between 1970 and April, 1974, plaintiff applied five or six times for promotions to various positions within the agency, but her efforts were unsuccessful.

5. Concededly, plaintiff handled in an acceptable and efficient manner her work tasks and assignments. See Defendants' Exhibit 2. The evidence further demonstrates that in the course of performing her duties, including her role as a union steward, plaintiff became increasingly vociferous within the agency in support of the rights and advancement of female workers at HCCAA and its satellite agencies. The evidence establishes that plaintiff felt increasingly aggrieved over her own employment situation, particularly her inability to advance within the agency, and that of her fellow female employees, and that she filed multiple grievances contesting her lack of

promotion, in addition to voicing her opinion of this situation as she perceived it to persons at all levels of HCCAA. *See, e. g.,* Plaintiff's Exhibit 5.

6. As was obvious to the Court in its observation of the witnesses' demeanor as they testified, an essential ingredient which must be appreciated in this case is the interaction of all of the personalities involved and the extreme personal and political animosity displayed by many persons connected with HCCAA, including counsel, towards one another. Being generally aware of this pervasive factor provides a crucial foundation for analyzing the legal significance of the events leading up to plaintiff's dismissal as hereafter recounted.

### C. Events Culminating in Termination of Plaintiff's Employment

7. The series of events which culminated in the termination of plaintiff's employment with HCCAA occurred in April, 1974, and stemmed from a general shift upwards in the positions held by higher level personnel as a result of a six-month leave of absence granted the director of the agency. The testimony is at times not absolutely clear as to the exact chronology of events which thereafter transpired. Accordingly, the Court has relied, when necessary, on the notes of the Personnel Committee hearing in the case of Ms. Dafro M. Jeffries, introduced as Plaintiff's Exhibit 12, which provides a complete recitation of the events in question.

8. Two "Field Representative" positions had been held prior to the personnel shift by a white female and black male. Because of their simultaneous advancement in late March, 1974, the two positions became open to lower echelon employees, including plaintiff.

### Week of April 1, 1974

9. On April 2, a notice was posted by plaintiff as an employee of the Personnel Department announcing the existence of two vacancies for the position of Field Representative in the Operations Department and stating that written applications would be accepted until April 11, 1974. *See* Plaintiff's Exhibit 1. Plaintiff, desiring to ascend to this position, immediately applied for the position.

10. That same afternoon, while in the office of the Director of Operations, plaintiff noticed a completed "Personnel Action" form on Mr. Eddie D. Jones, a black male, for the position of "Acting Field Representative" commencing April 8, 1974. Plaintiff, believing this to be evidence that established personnel promotion procedures were not being followed for the position of Field Representative in which she was interested, thereupon expressed concern over her discovery to the Assistant to the Acting Director of Personnel, the Personnel Manager and the Acting Executive Director, defendant Silva. *See* Plaintiff's Exhibit 12, at 2.

11. It is undisputed that defendant Silva explained to plaintiff that because one of the Field Representative positions to be filled was merely temporary for a period of six months and would terminate once employees on leave of absence from HCCAA returned to their regular HCCAA work tasks, there was not going to be a formal selection procedure for the temporary post. Instead, Silva, at the recommendation of the new Director of Operations, Mr. Marshall Harrison, had selected Mr. Jones to fill the temporary position. Thus, according to Silva, any posting of notice for the temporary position was a mistake. Silva did stress to plaintiff that she would be considered for the permanent Field Representative position in accordance with agency guidelines.

12. Following his discussion with plaintiff, defendant Silva directed Mr. Tommy Baker, the Personnel Manager, to take the necessary steps to ensure that all persons understood that only one permanent Field Representative position would be filled through the formal selection process.

### Weeks of April 8 and 15, 1974

13. On April 8, 1974, Jones notified Harrison in writing that he accepted the position of Field Representative with the

understanding that it was on a temporary basis and that if the position were made permanent, he would be required to go through the formal promotion procedure. *See* Defendants' Exhibit 11, at 2. Thereafter, Jones was designated as Acting Field Representative in the Operations Department. *Id.*

14. Plaintiff was dissatisfied with defendant Silva's explanation, however, viewing this episode as but another example of misinterpretation of HCCAA rules by HCCAA executives to perpetuate control of desirable middle- and upper-level work assignments at HCCAA. Indeed, as the evidence and plaintiff's demeanor on the witness stand conclusively demonstrate, plaintiff became incensed over this incident because she sincerely came to perceive it augmentatively as another in a long line of indignities levelled against her as a black female employee at HCCAA. *See, e. g.,* Plaintiff's Exhibit 5.

15. Plaintiff contacted defendant Janet Walker about the Jones hiring, a person whom plaintiff viewed as sharing her concern over the employment predicament of HCCAA's female employees and who, as chairman of the HCCAA Personnel Committee and as a member of the HCCAA Board of Directors, was in a position of sufficient authority to bring about plaintiff's desired reforms. Plaintiff talked to Ms. Walker twice about the matter on the telephone. Additionally, she delivered two packets of information consisting, *inter alia,* of Xeroxed copies of agency documents including individual personnel records, which plaintiff deemed pertinent to establishing other alleged violations of personnel practices. *See* Defendants' Exhibits 16–24. Included in the second packet of materials was a copy of the application of Eddie Jones for the Field Representative position dated April 18, 1974, along with a number of documents relating to a grievance involving Earnestine Martinez, another HCCAA employee.

16. Plaintiff also wrote a memorandum to Mr. Baker, the Personnel Manager and her immediate supervisor, protesting the manner in which Jones was selected and requesting a hearing at which her grievance could be aired. Plaintiff's Exhibit 6.

### Week of April 22, 1974

17. The receipt by Ms. Walker of the documents deemed relevant by plaintiff evoked a different concern in Ms. Walker and one unanticipated by plaintiff. She reviewed the documents and concluded that they constituted confidential personnel information the disclosure of which was, to her, unauthorized and in violation of HCCAA policy. She based this conclusion in part on her own prior inability upon request to gain access to agency personnel files containing similar information on account of their asserted confidentiality. In addition to being incensed about plaintiff's possible disclosure of confidential information, Ms. Walker testified at trial and at the HCCAA hearing on plaintiff's dismissal that she also was greatly disturbed that plaintiff, by contacting her informally, was trying to bypass the established grievance procedure.

18. Ms. Walker brought this disclosure to the attention of Mr. Silva for appropriate action. In response to Ms. Walker's expressions of concern, Mr. Silva commenced on April 23, 1974, an investigation of the incident and consulted, over a period of three days, HCCAA executives and supervisors to determine how the incident should be handled. Mr. Baker, plaintiff's supervisor, recommended to Silva that plaintiff be disciplined by being placed on probation in accordance with suggested policy guidelines. *See* Plaintiff's Exhibit 11, Appendix A, at 1; Plaintiff's Exhibit 28. Others, however, urged Silva to take stronger action.

19. During the three-day period that Silva was ascertaining the opinions of other top-level HCCAA executives as to what disciplinary action should be taken with respect to plaintiff, Mr. Marshall Harrison was conducting interviews of the top applicants for the permanent Field Representative post. In a memorandum dated April 26, 1974, to Mr. Baker, Mr. Harrison indicated that on April 24th and 25th, inter-

views were conducted with six of the seven top applicants. See Defendants' Exhibit 14. The other top applicant, plaintiff, failed to appear for her scheduled appointment on April 24th and a re-scheduled appointment on April 25th. See therefore was not considered for the permanent position.

20. Beginning April 23, 1974, plaintiff was absent from work, having reported in sick. On April 24, 1974, plaintiff filed a Charge of Discrimination on the basis of sex with the Equal Employment Opportunity Commission ("EEOC") with regard to the Jones promotion. See Plaintiff's Exhibit 19.

21. On April 25, 1974, defendant Silva concluded that plaintiff should be dismissed and sent the following memorandum to Mr. William Bell, Director of Administration:

"I have carefully evaluated all meetings held in my office with Mr. Tommy Baker, Mr. James N E Williams and yourself on April 23, 24 and 25, 1974 concerning the removal of personnel records from the personnel files for distribution to a Board Member. I have reviewed the HCCAA Personnel Practices and want to call to your attention *Appendix A, Disciplinary Procedures, Item 2–a.* I recognize the 10-day suspension is for a first offense for the removal or destruction of agency records or equipment.

"However, it is my opinion that personnel records are confidential and should always be treated as such. In view of this fact and in view of the gravity of the actions taken by this employee, I consider her conduct prejudicial to the interest of HCCAA.

"I have no other alternative than to demand that Mrs. Dafro Jeffries be terminated for cause and I refer you to the HCCAA Personnel Practices, *page 9, Item 24–a.*

"Please have the PA form prepared and in my office by 5:30, April 25, 1974 (today), termination effective Friday, April 26, 1974."

Plaintiff's Exhibit 10; Defendants' Exhibit 12.

22. Plaintiff did not receive notification of her discharge until April 30, 1974. Mr. Baker, in charge of informing plaintiff of her termination, noted that the Personnel Department was unable to locate plaintiff because her personnel records did not reflect a current address or telephone number. See Defendants' Exhibit 29.

23. The evidence demonstrates that the defendants did not receive notice and were otherwise unaware of the filing of the EEOC charge by plaintiff until at least two to four weeks after the decision to terminate was made. See Defendants' Exhibit 5.

### D. Post-Termination Actions

24. The Personnel Committee, chaired by Ms. Walker, conducted a hearing on the Jones promotion and plaintiff's dismissal on June 10, 1974, at which plaintiff, her present counsel, and defendants Silva and Walker all participated. See Plaintiff's Exhibit 12. On June 12, 1974, the Personnel Committee announced its support for the action taken by defendant Silva. Plaintiff's Exhibit 13. Thereafter, on July 1, 1974, the 25-member Board of Directors for HCCAA also voted to affirm plaintiff's dismissal. Plaintiff's Exhibit 14.

25. The EEOC ultimately determined that

"the discordant use of the selection procedure to the advantage of the male recipient is enough to establish an inference that Charging Party's sex was at least a factor in her failure to receive the promotion. Charging Party protested the selection of a male to the position for which she applied and was subsequently discharged within two (2) weeks. Based on the evidence it is necessary to deduce that the discharge was predicated at least in part on the ground of Charging Party's protests."

Plaintiff's Exhibit 20, at 1–2.

26. At the time her employment was terminated in April, 1974, plaintiff was being compensated at an annual salary of $8,064. She has not been employed since her termination but according to uncontroverted evidence she has occupied herself by

continuing to participate in union affairs to assist in the settlement of grievances of female workers and by tending to her husband after surgery was performed on him.

### E. Racial Discrimination

27. Standing alone, plaintiff's allegation that defendant discriminated against her on account of her race with regard to the Jones promotion must be viewed as unsupportable. Both plaintiff and Jones are black, as was one of the two employees who previously held the Field Representative post. Moreover, plaintiff has failed to demonstrate that any consideration was given to racial factors when the decision was made to fire plaintiff. Such a finding is buttressed generally by the racial composition of the HCCAA staff, a noticeable percentage of which is black, and the minority-oriented purpose of the agency.

### F. Sex Discrimination

28. Plaintiff also has failed to demonstrate by a preponderance of the evidence that any consideration was given to gender or a sex classification in the selection of Jones instead of plaintiff for the position of Field Representative or in the decision to fire plaintiff. Allegations of irregular promotion practices violative of HCCAA Guidebook procedures in the selection of Jones do not automatically translate into a showing of unlawful sex discrimination.

Additionally, the preponderating evidence demonstrates that HCCAA does not discriminate generally on the basis of sex. The evidence establishes that in April, 1974, female employees held sixteen out of thirty-six supervisory positions within the agency, and that several women occupied positions on the Board of Directors of HCCAA. Prior to the Jones promotion, one of the Field Representative positions was held by a female. There simply is no evidence to indicate that any sexual classification was utilized by defendants either in appointing Jones to the vacant position or in firing plaintiff on April 25.

### G. Retaliatory Firing

29. The evidence demonstrates that as of April 25, 1974, the date on which the decision to terminate was made, defendants were not aware that plaintiff had, the day before, filed a formal charge of discrimination with EEOC. Indeed, the only evidence introduced demonstrates that defendants were not made aware of the EEOC charges until weeks later. *See* Defendants' Exhibit 5. Therefore, the Court finds that plaintiff was not dismissed because of her resort to the administrative mechanism provided by Title VII to challenge asserted unlawful employment practices.

30. Plaintiff filed numerous grievances with regard to her inability to advance during her employment with HCCAA. She was very vocal in pointing up defendants' shortcomings with regard to employment policies and was well-known by the individual defendants because of her outspokenness on the subject. However, the evidence demonstrates that defendants did not retaliate against plaintiff and did not decide to terminate her employment until they learned of her distribution to Ms. Walker of confidential personnel records.

31. The evidence is not clear as to whether plaintiff had proper access to the documents transmitted to Ms. Walker. However, there is little dispute that plaintiff, either in her capacity as a union steward or as a HCCAA employee, did not have the authority to disseminate many of the documents contained in the two packets of information sent to Ms. Walker. The testimony of defendants Silva and Walker also demonstrates that HCCAA executives were becoming increasingly concerned about lax procedures with regard to personnel records and were determined to enforce more strictly the guidelines pertaining thereto.

32. The individual most distressed by plaintiff's actions and the person who disclosed such acts to Acting Executive Director Silva was Ms. Walker, a female who, because of her dedication to the concept of sexual equality, was singled out by plaintiff to aid her cause. It is axiomatic that Ms. Walker, in prompting Silva to investigate

the matter further, did not act with a retaliatory purpose in mind because of plaintiff's opposition to alleged discriminatory policies. Rather, Ms. Walker expressed at trial and at the HCCAA hearing on plaintiff's dismissal, *see* Plaintiff's Exhibit 12, a genuine concern and distaste for the manner in which plaintiff had sought to challenge the Jones promotion.

The Court finds that Ms. Walker's attitude towards plaintiff's course of conduct generally was shared by other higher level executives in HCCAA and that it was plaintiff's unauthorized dissemination of confidential personnel documents which caused her dismissal, and not the fact that plaintiff attempted to challenge alleged unlawful employment practices.

33. Plaintiff therefore has not proved by a preponderance of the evidence that the principal reason for her discharge was because of her opposition to practices perceived by plaintiff to constitute unlawful race and sex discrimination. Rather, all of the evidence indicates that plaintiff's conduct as a HCCAA employee was the focal point of, and primary basis for, defendant Silva's decision to terminate her employment, carefully reached after three days of consultation and thereafter affirmed by the HCCAA Personnel Committee and the entire Board of Directors. Thus, the evidence demonstrates that defendants determined that the practice of distributing confidential personnel records by a HCCAA employee could not be tolerated, was disconsonant with HCCAA policy and efficient operation, and thus constituted "conduct prejudicial to the interest of HCCAA," *see* Plaintiff's Exhibit 11, at 9–10; Plaintiff's Exhibit 10; Defendants' Exhibit 12, warranting plaintiff's dismissal. The Court, having observed the demeanor of those who testified, therefore finds that the reason offered by defendants for plaintiff's dismissal was in fact the primary force behind her termination and not a pretext to carry out a surreptitious policy of retaliation or discrimination.

34. It is not clear from the evidence introduced whether or not defendant Silva

followed strictly each regulation and personnel guideline established for the operation of HCCAA and its central office. Indeed, it is probable that the employment decisions concerning plaintiff were not carried out in strict conformity with HCCAA rules and regulations, although the evidence supports the conclusion that the Board of Directors, perhaps in violation of HCCAA guidelines, had authorized Silva simply to appoint persons to fill temporary positions. However, plaintiff has not introduced sufficient evidence to prove that any violation of Title VII of the 1964 Civil Rights Act occurred because of any such rule infractions. Rather, the evidence indicates only an apparent attempt by plaintiff to demonstrate violations of HCCAA policy guidelines or OEO directives, and an extrapolation of such violations onto Title VII as racial and sexual discrimination, or unlawful retaliation.

35. The Personnel Practices guide in effect during April, 1974, contains a section on "Disciplinary Procedures" and lists a category of offenses, entitled "Delinquency or Misconduct," followed by suggested personnel actions to be taken for the first, second and third offenses. The violation of "Removal or Destruction of Agency Records or Equipment" is thereafter listed, followed by a suggested personnel action of "10 Day Suspension" for the first offense and "Termination" for the second offense. Plaintiff's supervisor and Personnel Director, Tommy Baker, recommended probation to Silva in accordance with such guidelines. Silva, however, opted for immediate termination as permitted by Item 24a of the manual. *See* Plaintiff's Exhibit 11, at 9–10; Finding of Fact 21.

The Court finds no inference of unlawful, discriminatory behavior on the part of defendant Silva, the HCCAA Personnel Committee and the HCCAA Board of Directors in their decision to fire plaintiff in lieu of a temporary suspension.

36. Evidence was introduced on the type of disciplinary action taken in the past against other HCCAA employees who had obtained or disseminated confidential docu-

ments without proper authorization. Diane Flores was placed on ninety (90) days probation during 1971 for Xeroxing confidential information without securing proper authority. Plaintiff's Exhibit 8. Keith Finlayson was fired in 1969 "for removing, without permission, official records of HCCAA". Defendants' Exhibit 13. Defendant Silva testified that he was aware of the Finlayson dismissal and relied upon it as precedent when he decided to fire plaintiff.

### H. Conclusion

37. The Court has not conducted this inquiry to ascertain the correctness of the decision to terminate plaintiff's HCCAA employment. Rather, the Court has reviewed the facts against a backdrop of the totality of the circumstances, including the personalities involved, to ascertain on the evidence presented whether defendants fired plaintiff in good faith for cause based on conduct deemed prejudicial to the agency or in retaliation for her efforts to oppose alleged violations of federal civil rights law. The Court concludes that plaintiff has not demonstrated by a preponderance of the credible evidence that her employment with HCCAA was terminated primarily in retaliation for her efforts to oppose unlawful employment practices.

### II. CONCLUSIONS OF LAW

1. Jurisdiction is proper in this Court pursuant to 42 U.S.C. § 2000e–5(f)(3). HCCAA is an employer within the meaning of the statutory definition contained in Title VII, 42 U.S.C. § 2000e(b).

### A. Title VII: Race and Sex Discrimination Claims

2. Title VII in section 703(a), 42 U.S.C. § 2000e–2(a), prohibits an employer from taking certain actions against its employees on the basis of race or sex in accordance with the following legislative statement:

"(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

■ 3. Plaintiff has failed to demonstrate by a preponderance of the evidence that defendants have violated her rights under 42 U.S.C. § 2000e–2 on account of race discrimination. Finding of Fact 27.

■ 4. Plaintiff has failed to demonstrate by a preponderance of the evidence that defendants have violated her rights under 42 U.S.C. § 2000e–2 on account of sex discrimination. Finding of Fact 28.

### B. Title VII: Retaliatory Discharge and § 704(a)

5. In Section 704(a), 42 U.S.C. § 2000e–3(a), Title VII proscribes other employer conduct, not discussed in § 2000e–2, taken in retaliation for an employee's efforts to oppose "unlawful employment practices," as that term is defined in § 2000e–2:

"(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

### 1. Retaliation for Filing EEOC Charge

■ 6. The evidence in this case demonstrates that plaintiff was not fired in retaliation for her having filed a charge with the EEOC. While plaintiff literally simultaneously filed an EEOC charge and had her

employment terminated, the evidence demonstrates that defendants could not have, and did not, receive notice of the filing of this charge until well after the decision was made to terminate her employment. *See* Finding of Fact 29. Plaintiff thus has failed to demonstrate retaliatory action on account of the filing of the EEOC charge. *See, e. g., Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998 (5th Cir. 1969); *Wilson v. Woodward Iron Co.,* 362 F.Supp. 886 (N.D.Ala.1973).

### 2. Retaliation for Opposing Employment Practices

7. The remaining question therefore is whether plaintiff's actions in this case qualify for Section 704(a) protection under the second standard—i. e., whether plaintiff was retaliated against unlawfully because she opposed an unlawful employment practice or practices.

■ 8. The proper legal test to be applied to the facts is: whether plaintiff has shown by a preponderance of the evidence that her opposition to an alleged unlawful employment practice was the principal reason for her discharge. *See Dewey v. Reynolds Metals Co.,* 429 F.2d 324, 328 (6th Cir. 1970), *aff'd,* 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1970); *Tidwell v. American Oil Co.,* 332 F.Supp. 424, 430, 436 (D.Utah 1971); *Barnes v. Lerner Shops of Texas, Inc.,* 323 F.Supp. 617 (S.D.Tex.1971).

■ 9. Despite a paucity of legislative history, the principle is now well-established that Section 704(a) is to be broadly interpreted and applied by Courts of the United States to protect zealously employees' rights under Title VII. *Held v. Missouri Pacific R. Co.,* 373 F.Supp. 996, 1004 (S.D. Tex.1974), *citing Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1005 (5th Cir. 1969); *see Annotation,* 11 A.L.R.Fed. 316 (Supp.1976). However, as in most . cases where the Court is called upon to review the motive and intent behind an employment decision, the boundaries of the protection afforded to Section 704(a) plaintiffs and the equivalent duty imposed upon a Title VII employer cannot be measured precisely. Rather, the Court, in applying the statute to these facts, must utilize a common sense approach which takes into account the realities and complexities of the employer-employee relationship and determine whether Section 704(a) has been violated based on "reasonable inferences drawn from the totality of facts, the conglomerate of activities, and the entire web of circumstances presented by the evidence on the record as a whole." *Aeronca Mfg. Co. v. N. L. R. B.,* 385 F.2d 724, 727–28 (9th Cir. 1967).

■ 10. The primary issue in a Section 704(a) discharge case under the legal test announced above, *see* Conclusion of Law 8, is the nature, intent and motive of the employer's conduct as demonstrated by both direct and circumstantial (e. g., statistical) evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). Factors to be considered in determining whether the employer has retaliated discriminatorily and whether the employer's stated reason for discharging an employee is merely a "cover-up for a racially discriminatory decision" include: the employer's conduct against other persons who have committed acts of comparable seriousness; the employer's prior treatment of the employee and its reaction to the employee's legitimate civil rights activities; and the employer's "general policy and practice with respect to [minorities]." *Id.* at 804–05, 93 S.Ct. at 1825.

■ 11. On the basis of the Findings of Fact entered herein, the Court concludes that retaliation by defendants within the meaning of Section 704(a) was not the principal reason for plaintiff's dismissal. Other employees had been fired in the past for generally similar conduct. *See* Finding of Fact 36. Moreover, although plaintiff had filed numerous grievances in the past on behalf of herself and others contesting what she viewed as unlawful discriminatory policies, *see* Finding of Fact 30, no formal action had ever been taken against her during her seven years with HCCAA. Finally, in view of the overwhelming percentage of

minority persons employed at HCCAA and the large number of blacks and females in supervisory capacities, and given that HCCAA's role is to promote minority involvement in business and community affairs by training minority persons, this Court cannot conceive of a less likely candidate for a charge of unlawful retaliation.

12. The primary concern to these defendants was not the fact that plaintiff was attempting to challenge a practice alleged to be discriminatory. In fact, the individual defendants, as employees of HCCAA, were employed to assert similar opposition to discriminatory practices in the community. Rather, defendant Silva, as Acting Executive Director, dismissed plaintiff in good faith on the basis of her actions in transmitting copies of confidential documents and personnel records to a co-employee without authorization, and his action was upheld by the HCCAA Personnel Committee, after it conducted a hearing on the matter, and by the HCCAA Board of Directors.

In reaching this conclusion, the Court is especially swayed by the reaction of Ms. Walker to plaintiff's conduct and her testimony as to such at trial. *See* Finding of Fact 32. There is no doubt but that Ms. Walker is dedicated to the principles of sexual and racial equality. Indeed, Ms. Walker's dedication prompted plaintiff to transmit the confidential documents to her in the hope that Ms. Walker would exert her influence with other HCCAA executives on behalf of plaintiff. However, plaintiff's plan backfired as Ms. Walker, upon receipt of the confidential records, set in motion the chain of events which led to plaintiff's dismissal. Given Ms. Walker's personal attitudes towards discrimination, she did not act with retaliatory intent in disclosing plaintiff's malfeasance to Silva. Her purpose, as testified to at trial, was to rectify what she believed to be serious misconduct on the part of a co-employee. The Court concludes that the remedial motive which prompted Ms. Walker, a person who shares with plaintiff a similar ideology, to action is also the motive which prompted defendants to dismiss plaintiff. Such a motive for dismissal is permissible under Section 704(a) since it entails no retaliatory purpose.

■ 13. The correctness of defendants' decision is not before the Court for review. Because the Court concludes that defendants did not retaliate against plaintiff on the basis of her opposition to alleged unlawful employment practices, it is unnecessary to determine the degree to which plaintiff's transmission of the documents was in fact within the scope of her authority as an employee or as a union steward. Such consideration of the nature of plaintiff's opposition becomes relevant only where a prima facie case of retaliation is proved and the retaliator contends as a defense that his conduct is not prescribed by Section 704(a) but is lawfully justified because of the nature, illegal or otherwise, of the employee's "opposition". *See, e, g., McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 804, 93 S.Ct. at 1817.

14. The Court therefore concludes that defendants did not violate Section 704(a) in their discharge of plaintiff.

## C.  CONCLUSION

15. Plaintiff has not shown by a preponderance of the evidence that defendants discriminated against her on the basis of race or sex, or unlawfully retaliated against her because of her opposition to alleged unlawful employment practices, as outlawed by 42 U.S.C. § 2000e–2(a) or 3(a). Accordingly, plaintiff is not entitled to relief.

16. In the event that any of the foregoing Findings of Fact also constitute Conclusions of Law, they are also adopted as Conclusions of Law. In the event that any of the foregoing Conclusions of Law also constitute Findings of Fact, they are also adopted as Findings of Fact. This case is hereby dismissed.