Dafro M. JEFFERIES,
Plaintiff-Appellant,

v.

HARRIS COUNTY COMMUNITY
ACTION ASSOCIATION et al.,
Defendants-Appellees.

No. 77–1848.

United States Court of Appeals,
Fifth Circuit.

April 21, 1980.

Jesse R. Funchess, Houston, Tex., for plaintiff-appellant.

Ernesto Valdes, Houston, Tex., for defendants-appellees.

Before TUTTLE, GOLDBERG and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

■ In this Title VII case, Appellant Jefferies appeals from a district court order dismissing after trial her claim that her former employer, Harris County Community Action Association (HCCAA), violated Section 703(a) of Title VII [1] by discriminating against her on the basis of race and sex in failing to promote her and in terminating her employment, and violated Section 704(a) of Title VII [2] by terminating her employment in retaliation for filing an EEOC charge and for opposing allegedly unlawful employment practices.[3] The decision below is reported at 425 F.Supp. 1208 (S.D.Tex.1977). Jefferies, a black woman, worked for HCCAA from February 13, 1967 until she was terminated effective April 26, 1974. HCCAA was a non-profit corporation which received some of its funds from the federal government.

## I. FACTS

Jefferies was employed in 1967 as Secretary to the Director of Programs, and was

---

1. Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a) provides in pertinent part:

 It shall be an unlawful employment practice for an employer—
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

2. Section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a) provides in pertinent part:

 It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

3. Jefferies filed two lawsuits which were consolidated for trial. Each complaint charged HCCAA with violations of Title VII and 42 U.S.C. § 1981. The district court made no ruling on the § 1981 claims, and they are not properly before us because Jefferies did not press them at trial or raise them on appeal.

later promoted to Personnel Interviewer in 1970. Between 1970 and April, 1974 she applied several times for promotions to various positions within the agency, but her efforts were unsuccessful. Jefferies was a union steward from 1970 until her termination, and during her seven years with HCCAA, Jefferies filed many grievances on her own behalf and on the behalf of union members.

On April 2, 1974 a notice was posted announcing two vacancies for Field Representative positions which were to be open until April 11. Jefferies immediately applied. The newly vacant Field Representative positions had been staffed by a white female and a black male. On the day of her application for the vacant position, Jefferies saw a completed "personnel action" form which indicated that Eddie Jones, a black male, had already been hired for the position of Acting Field Representative. Jefferies complained to the Acting Personnel Manager and to Mario Silva, the Acting Executive Director of HCCAA. Silva told her that the posting was a mistake, since the position was only temporary.

Believing she was a victim of discrimination, Jefferies xeroxed the Jones "personnel action" form and sent it with other personnel materials to Janet Walker, Chairman of the HCCAA personnel committee and a member of the HCCAA Board of Directors. Instead of providing the help Jefferies had anticipated, Walker brought the dissemination of the records to Silva's attention. In response to Walker's expression of concern that the documents were confidential agency material, Silva commenced an investigation on April 23, 1974. Jefferies' supervisor recommended to Silva that she be placed on probation, according to HCCAA guidelines, but on the advice of others Silva decided to terminate her pursuant to other HCCAA guidelines for "conduct prejudicial to the interest of HCCAA" as of April 26.

Prior to her termination, Jefferies complained to her supervisors about the Jones promotion, and wrote a memorandum to her immediate supervisor on April 23. She filed EEOC complaints on April 24 and May 2. Formal notice was sent by the EEOC to HCCAA on or after April 28. In June, 1974, the personnel committee conducted a hearing on the Jones promotion and on Jefferies' discharge, which she attended. The committee approved the termination.

Trial testimony established that 60–70% of the employees at HCCAA were female. In April, 1974 female employees held sixteen out of thirty-six supervisory positions within the agency and several women occupied positions on the Board of Directors of HCCAA. No women were department heads. Jefferies' undisputed testimony established that every position for which she had applied had been filled by males or non-black females. Jefferies was never told she was unqualified for any of these positions, and the district court found that she "handled in an acceptable and efficient manner her work tasks and assignments." 425 F.Supp. at 1209.

The district court dismissed Jefferies' claim of race and sex discrimination in HCCAA's failure to promote her and its decision to terminate her. In addition, the district court dismissed her claim of retaliatory firing.

Jefferies urges us to reverse the district court for four reasons. She argues that: (1) the district court erred by dismissing her claim of race and sex discrimination; (2) the district court's findings of fact were clearly erroneous; (3) the district court erred by refusing to consider the correctness of HCCAA's decision to terminate her; and (4) the district court erred by failing to determine that she was denied due process of law.

We affirm the district court's decision in part and vacate and remand in part for further findings of fact and conclusions of law consistent with this opinion.

## II. PROMOTION

In her complaint, Jefferies charged that HCCAA discriminated against her in promotion "because she is a woman, up in age and because she is Black." Jefferies objects to the district court's finding that

she failed to demonstrate by a preponderance of the evidence that HCCAA's failure to promote her was based on race or sex discrimination. In addition, she contends that the district court erred by failing to address her claim that HCCAA discriminated against her on the basis of *both* race *and* sex. Although the pleadings were worded ambiguously and are subject to varying interpretations, we think that under the liberal federal concept of notice pleading, Jefferies' complaints articulated claims of discrimination in promotion based on sex or race or age and, in the alternative, sex and race and age. The age discrimination claim did not materialize as a live issue at trial and is not before us on appeal. However, the claims of race discrimination, sex discrimination, and discrimination based on *both* race *and* sex were properly raised in the pleadings and at trial. Therefore, because Jefferies contends that the district court erred in its consideration of each of her claims of discrimination in promotion, all are properly before us on appeal.

### A. *Race Discrimination*

■ We agree with the district court that Jefferies failed to prove race discrimination in promotion. Jones, who was promoted in an acting capacity to the job Jefferies sought, was black. As we recognized in *Adams v. Reed,* 567 F.2d 1283, 1287 (5th Cir. 1978), where both the person seeking to be promoted and the person achieving that promotion were women, "because the person selected was a woman, we cannot accept sex discrimination as a plausible explanation for [the promotion] decision." *See also Jenkins v. Caddo-Bossier Ass'n,* 570 F.2d 1227, 1228–29 (5th Cir. 1978). We therefore affirm the district court's finding that race discrimination played no part in the failure to promote Jefferies.

### B. *Sex Discrimination*

■ Jefferies contends that the district court erred in its determination that she did not prove sex discrimination in promotion by a preponderance of the evidence. In order to establish a prima facie case, a

plaintiff must show that (1) she belongs to a group protected by Title VII, (2) she applied for and was qualified for a job for which the employer was seeking applicants, (3) despite her qualifications she was rejected, and (4) after her rejection the position remained open and the employer continued to seek applicants among persons having plaintiff's qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Burdine v. Texas Department of Community Affairs,* 608 F.2d 563, 567 (5th Cir. 1979).

Once the plaintiff establishes a prima facie case of sex discrimination, the employer then has the burden of articulating a legitimate, nondiscriminatory reason for the employment decision. *See, e. g., id.* at 567; *Corley v. Jackson Police Department,* 566 F.2d 994, 998–99 (5th Cir. 1978). We have recently made clear that " 'articulating' a legitimate reason involves more than merely stating fictitious reasons; *legally sufficient* proof is needed before the trier of fact can find plaintiff's proof rebutted." *Burdine,* 608 F.2d at 567. Once the plaintiff's prima facie case has been successfully rebutted, the plaintiff must be given a fair opportunity to show that the reason articulated by the employer is in fact a pretext for discrimination. *McDonnel Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine,* 608 F.2d at 567.

In addressing Jefferies' claim of sex discrimination in promotion, the district court stated:

> Plaintiff also has failed to demonstrate by a preponderance of the evidence that any consideration was given to gender or a sex classification in the selection of Jones instead of plaintiff for the position of Field Representative . . . . Allegations of irregular promotion practices violative of HCCAA guidebook procedures in the selection of Jones do not automatically translate into a showing of unlawful sex discrimination.

Additionally, the preponderating evidence demonstrates that HCCAA does not discriminate generally on the basis of sex. The evidence establishes that in April, 1974, female employees held six-

teen out of thirty-six supervisory positions within the agency, and that several women occupied positions on the Board of Directors of HCCAA. Prior to the Jones promotion, one of the Field Representative positions was held by a female. There simply is no evidence to indicate that any sexual classification was utilized by defendants . . . in appointing Jones to the vacant position . . . .

425 F.Supp. at 1213.

■ The problem with the district court's treatment of Jefferies' claim of sex discrimination in promotion is that the district court did not adequately articulate the legal rationale for its decision. The district court did not address the question whether Jefferies made out a prima facie case of sex discrimination under the *McDonnell Douglas* standards. In addition, it made no findings concerning the comparative qualifications of Jefferies and Jones for the Field Representative position. In *Burdine*, we emphasized the necessity for comparative evidence in disparate treatment cases:

> In *East v. Romine, Inc.*, 518 F.2d 332 (5th Cir. 1975), this court added another element to defendant's rebuttal in disparate treatment cases: defendant must prove that those he hired or promoted were somehow *better* qualified than was plaintiff; in other words, comparative evidence is needed. An assertion, for example, that plaintiff had a poor work history will not suffice unless defendant can show by comparative factual data that those hired or promoted had a better work history.

608 F.2d at 567.

While we have been able to dispose of certain claims of discrimination on appeal even though the district court did not clearly articulate its factual and legal basis for decision, *see, e. g., Burdine*, 608 F.2d at 567–69; *East v. Romine*, 518 F.2d at 338, we think those cases are distinguishable. In *Burdine*, the district court made at least an implicit finding that the plaintiff was less qualified for promotion than the person promoted. 608 F.2d at 567 n. 7. Here, the district court in no way addressed the issue of comparative qualifications. In *East v. Romine*, this court was able to reverse the district court without a remand for further findings because it was able to conclude that the plaintiff made out a prima facie case of discrimination and the employer failed to present comparative evidence of any kind. 518 F.2d at 338–40. *See also Burdine*, 608 F.2d at 569 n. 11. Here, evidence of comparative qualifications was introduced at trial but was never evaluated by the district court. Indeed, the district court made no factual findings concerning Jones' qualifications for the job. Without specific factual findings concerning comparative qualifications, and in the absence of any attempt by the district court to evaluate Jefferies' claim in light of the legal framework governing Title VII claims,[4] we must conclude that the district court's findings do not satisfy F.R.Civ.P. 52(a) because a full understanding of the issues to be resolved on appeal cannot be reached. *See Theriault v. Silber*, 547 F.2d 1279, 1280–81 (5th Cir.), *cert. denied*, 434 U.S. 871, 98 S.Ct. 216, 54 L.Ed.2d 150 (1977); *Armstrong v. Collier*, 536 F.2d 72, 77 (5th Cir. 1976); *Mladinich v. United States*, 371 F.2d 940 (5th Cir. 1967).[5] Therefore, we vacate the por-

---

4. The district court found that HCCAA did not "discriminate generally on the basis of sex" because nearly half of its supervisors were women, women were on its Board of Directors, and one of the vacant Field Representatives positions had been held by a woman. Though these statistics may be some evidence of absence of discrimination, especially in a disparate impact case, they do not constitute an adequate basis for a finding of non-discrimination in a disparate treatment case involving a particular instance of failure to promote.

5. This is not a case in which all the evidence is documentary, the facts are undisputed, or the inferences to be drawn from undisputed facts are clear, which would obviate the necessity for remand. *See Armstrong v. Collier*, 536 F.2d at 77. In addition, though the "ultimate fact" of discrimination or nondiscrimination in employment is to be reviewed free of the clearly erroneous standard, *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1382 (5th Cir. 1978), *cert. denied*, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979), the reviewing court must determine whether there are enough

tion of the district court's opinion which held that Jefferies failed to prove sex discrimination in promotion and remand to the district court for further findings of fact and conclusions of law.

■■ On remand, the district court should make specific findings on whether Jefferies established a prima facie case and, if so, whether HCCAA presented sufficient evidence concerning the comparative qualifications of Jones and Jefferies to rebut the prima facie case. If the district court finds that HCCAA was successful in its rebuttal, it should make specific findings concerning whether Jefferies presented sufficient evidence to establish that HCCAA's articulated reason for promoting Jones rather than Jefferies was pretextual. The district court is free to construct its findings of fact and conclusions of law concerning Jefferies' claim of sex discrimination in promotion based on the original record since it appears from our review of the record that the district court did not prevent the introduction of any testimony the parties wished to present.

### C. Race and Sex Discrimination

Jefferies contends that the district court erred in that it did not address her claim that HCCAA discriminated against her in promotion on the basis of both race and sex. The district court made no findings concerning this claim of discrimination based on a combination of race and sex. Rather, it separately addressed Jefferies' claims of race discrimination and sex discrimination. Jefferies argues that because she claims that she was discriminated against as a black female, the district court erred by taking into account the fact that Jones, who received the promotion Jefferies sought, was black and by considering HCCAA's statistical evidence concerning the number of white females and black males on the HCCAA staff. Jefferies argues that if a Title VII plaintiff alleges that her employer discriminated against black females, the

only statistics relevant to that claim of discrimination would be the number of *black females* hired or promoted by the employer.

■■ We agree with Jefferies that the district court improperly failed to address her claim of discrimination on the basis of both race and sex. The essence of Jefferies' argument is that an employer should not escape from liability for discrimination against black females by a showing that it does not discriminate against blacks and that it does not discriminate against females. We agree that discrimination against black females can exist even in the absence of discrimination against black men or white women.

■■■ Title VII provides a remedy against employment discrimination on the basis of an employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). The use of the word "or" evidences Congress' intent to prohibit employment discrimination based on any or all of the listed characteristics. That this was the intent of Congress is also supported by the fact that the House of Representatives refused to adopt an amendment which would have added the word "solely" to modify the word "sex." 110 Cong.Rec. 2728 (1964). Black females represent a significant percentage of the active or potentially active labor force. In the absence of a clear expression by Congress that it did not intend to provide protection against discrimination directed especially toward black women as a class separate and distinct from the class of women and the class of blacks, we cannot condone a result which leaves black women without a viable Title VII remedy. If both black men and white women are considered to be within the same protected class as black females for purposes of the *McDonnell Douglas* prima facie case and for purposes of proof of pretext after an employer has made the required showing of a legitimate, non-discriminatory reason for the adverse employment action, no remedy will

---

"subsidiary facts" to undergird the ultimate fact, *id.* at 1383. In the absence of findings of fact relating to material issues under *McDon-*

*nell Douglas* and its progeny, we are unable to review the ultimate fact finding.

exist for discrimination which is directed only toward black females.

We also feel that this result is mandated by the holdings of the Supreme Court and this court in the "sex plus" cases. The idea that disparate treatment of a subclass of women could constitute a violation of Title VII was initially rejected in *Phillips v. Martin Marietta Corp.*, 411 F.2d 1 (5th Cir. 1969). The court held that a company's refusal to hire women with pre-school-age children, while hiring similarly situated men, was not sex-based discrimination prohibited by Title VII.

> A per se violation of the Act can only be discrimination based solely on one of the categories i. e., in the case of sex; women vis-a-vis men. When another criterion of employment is added to one of the classifications listed in the Act, there is no longer apparent discrimination based solely on race, color, religion, sex, or national origin.

*Id.* at 3–4. In a dissent to the court's denial of a Petition for Rehearing en banc, Judge Brown explained the fallacy of this reasoning. He maintained that refusal to consider "sex plus" discrimination under Title VII would completely undermine the Act.

> Free to add non-sex factors, the rankest sort of discrimination against women can be worked by employers. This could include, for example, all sorts of physical characteristics, such as minimum weight (175 lbs.), minimum shoulder width, minimum biceps measurement, minimum lifting capacity (100 lbs.), and the like.

*Phillips v. Martin Marietta Corp.*, 416 F.2d 1257, 1260 (5th Cir. 1969). The Supreme Court agreed with Judge Brown that the Court of Appeals erred in interpreting section 703(a) of the Civil Rights Act of 1964 to permit one hiring policy for women and another for men. "Section 703(a) . . . requires that persons of like qualifications be given employment opportunities irrespective of their sex." *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544, 91 S.Ct. 496, 497–498, 27 L.Ed.2d 613 (1971). Following this pronouncement, other courts invalidated company rules which singled out

certain subclasses of women for discriminatory treatment. *See In re Consolidated Pretrial Proceedings*, 582 F.2d 1142, 1145 (7th Cir. 1978) (policy requiring female cabin attendants with children to accept ground duty positions "a clear example of sex discrimination"); *Barnes v. Costle*, 183 U.S.App.D.C. 90, 91, 561 F.2d 983, 984 (D.C. Cir.1977) (female employee's job was abolished because she repulsed employer's sexual advances); *Jacobs v. Martin Sweets Co.*, 550 F.2d 364, 371 (6th Cir.) (company violated Title VII by firing single women who became pregnant), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1979); *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1198 (7th Cir.) (no-marriage rule for stewardesses violates Title VII), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); *Lansdale v. United Airlines, Inc.*, 437 F.2d 454, 455 (5th Cir. 1971) (following *Phillips*); *Jurinko v. Wiegand Co.*, 331 F.Supp. 1184, 1187 (W.D.Pa.1971) (refusal to hire married women violates Title VII).

The only significant group of cases to reject the "sex plus" theory of discrimination are cases in which plaintiffs have claimed that hair length regulations for men constitute "sex plus" discrimination. In holding that these rules do not constitute unlawful discrimination, courts have distinguished the other sex plus cases as involving regulations which concern sex plus an immutable characteristic or a constitutionally protected activity such as marriage or child rearing—regulations which "present obstacles to employment of one sex that cannot be overcome." *Earwood v. Continental Southeastern Lines, Inc.*, 539 F.2d 1349, 1351 (4th Cir. 1976); *see Knott v. Missouri Pacific Railroad Co.*, 527 F.2d 1249, 1252 (8th Cir. 1975). This court discussed the sex plus theory of discrimination in *Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084 (5th Cir. 1975), a case in which a male plaintiff complained of hair length regulations. The court noted that the legislative history of Title VII supports use of the sex plus theory, since the amendment which would have added the word "solely" to modify the word "sex" was de-

feated. "Presumably, Congress foresaw the debilitating effect such a limitation might have upon the sex discrimination amendment." *Id.* at 1089. Emphasizing that Congress' intent was to provide equal job opportunity, the court stated:

Equal employment opportunity may be secured only when employers are barred from discriminating against employees on the basis of immutable characteristics, such as race and national origin. Similarly, an employer cannot have one hiring policy for men and another for women if the distinction is based on some fundamental right.

*Id.* at 1091. The court refused, however, to extend the coverage of the Act to prohibit grooming distinctions for the sexes. *Id.* at 1092.

It is clear from the foregoing cases that an employer may not single out black women for discriminatory treatment. "The effect of the statute is not to be diluted because discrimination adversely affects only a portion of the protected class." *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1198 (7th Cir.), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); *see Barnes v. Costle*, 183 U.S.App.D.C. 90, 97, 561 F.2d 983, 990 (D.C.Cir.1977). An employer may not apply different standards of treatment to women with young children, to married women, or to women who are single and pregnant. It is beyond belief that, while an employer may not discriminate against these subclasses of women, he could be allowed to discriminate against

black females as a class. This would be a particularly illogical result, since the "plus" factors in the former categories are ostensibly "neutral" factors, while race itself is prohibited as a criterion for employment.[6] As this court stated in *Willingham*, distinctions in employment practices between men and women on the basis of immutable or protected characteristics inhibit employment opportunity in violation of Section 703(a). 507 F.2d at 1091.

 Recognition of black females as a distinct protected subgroup for purposes of the prima facie case and proof of pretext is the only way to identify and remedy discrimination directed toward black females. Therefore, we hold that when a Title VII plaintiff alleges that an employer discriminates against black females, the fact that black males and white females are not subject to discrimination is irrelevant and must not form any part of the basis for a finding that the employer did not discriminate against the black female plaintiff. Thus, the fact that Jones, who won the promotion Jefferies sought, was black does not bring him within Jefferies' protected class for purposes of her prima facie case. Similarly, when pretext is at issue—that is, when Jefferies attempts to show that the employer's purported reason for the adverse employment action is merely a mask for discrimination by showing that persons outside her class were treated differently than herself—black males and white females must be treated as persons outside Jefferies' class.[7]

---

6. In Judge Brown's dissent from the court's denial of a rehearing in *Phillips*, he noted that, even under the court's rejection of the sex plus theory, an employer could not discriminate on the basis of sex plus one of the other statutory categories such as race. *Phillips v. Martin Marietta Corp.*, 416 F.2d 1257, 1260 n.10 (5th Cir. 1969).

7. Judge Randall's view of the appropriate disposition of the combination race and sex discrimination claim differs from that of the majority of the panel. Judge Randall thinks that in the present posture of this case, this court is not in a position to decide the question whether black females are a special Title VII class and the related question concerning the effect recognition of such a subclass would have on the

traditional framework of proof in Title VII cases. She notes that the district court has made no findings of fact or conclusions of law on either question. She notes further that Jefferies has cited no legal authority to support the existence of a "combination discrimination" claim, and that the only case of which the court is aware that addressed a claim of a combination of race and sex discrimination held that black women are not a special Title VII class. *See Degraffenreid v. General Motors Corp.*, 413 F.Supp. 142 (E.D.Mo.1976), *aff'd in part, rev'd in part on other grounds*, 558 F.2d 480 (9th Cir. 1977). In addition, she notes that HCCAA did not see fit to submit an appellate brief. Insofar as the authority cited by the majority is concerned, Judge Randall does not

■ Because the district court did not consider Jefferies' claim of discrimination on the basis of both race and sex, and because its treatment of HCCAA's defensive evidence impermissibly placed Jefferies in the same class as black males and white females, we must remand the issue to the district court so it may make appropriate findings of fact and conclusions of law in light of this opinion concerning Jefferies' claim of discrimination in promotion based on both race and sex. On remand, the district court should make findings on whether the evidence Jefferies presented was sufficient to establish a violation of Title VII under the standards that govern Title VII claims which we discussed above.

### III. TERMINATION

#### A. *Retaliatory Discharge*

■ Jefferies advanced two distinct claims of retaliatory firing under § 704(a). She argued that HCCAA terminated her in retaliation for (1) filing an EEOC charge, and (2) opposing unlawful employment practices. The district court found that Jefferies was not terminated in retaliation for filing an EEOC charge. The basis for

the district court's finding was that "[w]hile plaintiff literally simultaneously filed an EEOC charge and had her employment terminated, the evidence demonstrates that defendants could not have, and did not, receive notice of the filing of this charge until well after the decision was made to terminate her employment." 425 F.Supp. at 1215–16. Jefferies argues that the district court's finding that HCCAA received no notice of her filing of the EEOC charge is clearly erroneous, and we agree. At trial, Jefferies testified that on April 23, her last day of work and two days before the decision to fire her was made, she told Silva and her supervisor of her intention to file an EEOC complaint the next day. Her immediate supervisor testified that she might have informed him of her intention. The testimony of Jefferies and the supervisor on this point was undisputed. While the district court's conclusion that HCCAA had no notice of the filing of the EEOC charge is accurate insofar as it applied to formal or written notice of the charge, it is clearly erroneous because it failed to take into account the informal, verbal notice given by Jefferies which alerted HCCAA to her intent to file the charge.[8] We cannot

view the "sex plus" cases as dispositive of Jefferies' combination discrimination claim. The "sex plus" cases stand for the proposition that an employer's use of an ostensibly neutral factor to disadvantage women but not men is sex discrimination. *See, e. g., Willingham v. Macon Tel. Publishing Co.*, 507 F.2d 1084, 1089 (5th Cir. 1975). None of the "sex plus" cases involves the use of two statutorily protected characteristics as the basis of employment discrimination. Thus, they fail to answer the central question involved in this aspect of the case—whether any evidence concerning white women and black men is relevant when the alleged discrimination is based on both race and sex. What effect recognition of a subclass of black females should have on the traditional evidentiary framework governing Title VII litigation is simply not addressed in "sex plus" cases. Similarly, the majority's reference to the defeat of an amendment to Title VII which would have outlawed discrimination based "solely" on the statutory criteria offers little, if any, support for the majority's conclusion. The purpose of the amendment is not clearly set out in the report of the Title VII debates in the Congressional Record. This court has characterized the amendment as an attempt to

limit Title VII protection to discrimination based directly on sex rather than the use of a secondary characteristic to disadvantage only women. *Willingham*, 507 F.2d at 1089. Viewed in that light, the defeat of the amendment provides no more support for the majority's position than do the "sex plus" cases themselves. In light of the novelty and difficulty of a combination discrimination claim and the serious ramifications that recognition of such a claim would have on the ways in which it would be both proved and defended against, Judge Randall is of the view that this aspect of the case should be remanded to the district court for findings of fact and conclusions of law based on the trial record. In her view, the appellate process would function more effectively *following* a thorough consideration and testing out of the claim and its proof ramifications at the trial level.

8. After reviewing Jefferies' claim that a number of the district court's other fact findings were clearly erroneous, we find it to be without merit. However, in view of our disposition of Jefferies' claims of sex discrimination and a combination of race and sex discrimination in promotion, we do not pass on the accuracy of the district court's fact findings on those issues.

consider the error to be harmless because the district court explicitly held that retaliation could not have occurred in the absence of notice and its error could have affected its holding of no retaliation. Therefore, we remand Jefferies' claim of retaliatory firing for filing an EEOC charge to the district court for decision on the original record.

The district court also concluded that HCCAA did not terminate Jefferies in retaliation for her opposition to unlawful employment practices. It found, instead, that the principle cause of the discharge was "her actions in transmitting copies of confidential documents and personnel records to a co-employee without authorization," 425 F.Supp. at 1217, and that the stated reason was not a pretext for retaliation. Jefferies contends that the district court erred by failing to consider the correctness of HCCAA's decision to fire her, and that the copying and dissemination of the material was protected activity under § 704(a).

 The district court did not err by failing to consider whether HCCAA correctly determined that Jefferies' actions warranted her termination. Jefferies argues that the personnel action form she copied and the material she disseminated were not confidential, but we do not think the district court erred when it characterized the materials as confidential. In addition, whether HCCAA was wrong in its determination that Jefferies acted in violation of HCCAA guidelines in copying and disseminating the materials is irrelevant. In *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir. 1977), we held that where an employer *wrongly* believes an employee has violated company policy, it does not discriminate in violation of Title VII if it acts on that belief. *See also Corley v. Jackson Police Department*, 566 F.2d 994, 1003 (5th Cir. 1978). Here, there was substantial evidence that HCCAA officials sincerely believed both that the documents were confidential in nature and that Jefferies' actions violated agency policy. Trial testimony strongly supported HCCAA's claim that agency officials were becoming increasingly concerned about unauthorized dissemination of agency documents, and that agency officials sincerely believed that Jefferies lacked authority to copy or disseminate the material. In the absence of a showing by Jefferies that HCCAA treated whites or males differently, *Turner* insulates HCCAA's decision from sanction under § 704(a) even if it was incorrect in fact.

 Jefferies also argues that the copying and dissemination of the materials was protected activity under § 704(a) and that, by terminating her for copying and disseminating the records, it thereby punished her for legitimate "opposition" activity. We do not agree. Though Jefferies testified at trial that the reason she copied and disseminated the records was to call attention to what she perceived to be an unlawful employment practice, it is clear that not all "opposition" activity is protected under § 704(a). *See McDonnell Douglas*, 411 U.S. at 792–93, 93 S.Ct. at 1819–20; *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 230–34 (1st Cir. 1976); *Garrett v. Mobil Oil Corp.*, 531 F.2d 892, 895–96 (8th Cir.), *cert. denied*, 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976). Rather, the courts have required that the employee conduct be reasonable in light of the circumstances, and have held that "the employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare." *Hochstadt*, 545 F.2d at 233. HCCAA clearly had a legitimate and substantial interest in keeping its personnel records and agency documents confidential. Jefferies has not shown any need for surreptitious copying and dissemination of the documents. She has not established that HCCAA would have destroyed the documents had she not taken action to preserve them, and has not made a colorable claim that she reasonably believed there was a need to act as she did. Nor has Jefferies attempted to show that the grievance procedure in place at HCCAA at the time of her actions was inadequate. Under these circumstances, we hold that HCCAA's interest in protecting the confidentiality of its records outweighs Jefferies' right to pro-

tect her interests by opposing perceived employment discrimination. We therefore affirm the portion of the district court's opinion that dismissed Jefferies' claim of retaliatory firing for opposing unlawful employment practices.

### B. *Race and Sex Discrimination*

 The district court held that Jefferies failed to prove race or sex discrimination in termination under § 703(a). Though the district court did not clearly articulate its rationale for decision, we are able to affirm. We held above, in affirming the district court's dismissal of Jefferies' § 704(a) claim of retaliation for opposing unlawful employment practices, that HCCAA articulated a legitimate, non-discriminatory reason for the termination which was not sufficiently rebutted by evidence of pretext. That finding is equally dispositive in this context. Therefore, we affirm the portion of the district court's opinion which dismissed Jefferies' claim of sex and race discrimination in termination.

### IV. VIOLATION OF DUE PROCESS

 Jefferies' last contention on appeal is that HCCAA violated her right to due process of law under the fifth and fourteenth amendments by terminating her without prior notice and a hearing, and by failing to follow its own guidelines concerning the proper sanction to be meted out for the type of breach of agency policy at issue. Her contention fails for two reasons. First, it is clear that Jefferies' theory is aimed at showing a sufficient federal involvement in HCCAA's operations such that a due process right attaches. All of the cases Jefferies cites concern due process violations actionable under the fifth and fourteenth amendments or 42 U.S.C. § 1983. The fatal weakness in her theory is that nowhere in her pleadings did she raise the due process argument in the context of the fifth and fourteenth amendments or § 1983, nor did she argue a due process violation under the Constitution or § 1983 at trial. Therefore, her due process claims are not properly before us on appeal. Second, to the extent

that deviation from established regulations of the agency constituted evidence of pretext relevant to Jefferies' Title VII claims, the district court took her arguments into account. After careful review of the record, we cannot say that Jefferies' allegations of irregularities in following agency procedures, even if proved, constituted sufficient proof of pretext. We therefore find no reason to disturb the judgment of the district court on the basis of Jefferies' due process theory.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.