EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

ST. JOSEPH PAPER COMPANY,
Defendant.

Civ. A. No. 81–2511–H.

United States District Court,
W.D. Tennessee, W.D.

Feb. 18, 1983.

**436**

Lawrence J. Kamenetzy and Katharine W. Kores, Memphis, Tenn., for plaintiff.

Robert C.D. McDonald, Atlanta, Ga., Ronald H. Drost, Germantown, Tenn., for defendant.

## OPINION GRANTING JUDGMENT TO PLAINTIFF

HORTON, District Judge.

The Equal Employment Opportunity Commission (the Commission) filed this lawsuit against St. Joe Container Company[1] (St. Joe) charging that St. Joe discharged one of its employees, an employee with eight and one-half years seniority, Sylvester Hudson, for exercising rights secured to him by the civil rights laws of the United States. The Commission also charged that the reason offered by St. Joe in justification for the discharge of Hudson is pretextual. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1343, and 1345, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff alleged that St. Joe:

> Intentionally engaged in unlawful employment practices at its Memphis facility in violation of § 704(a), 42 U.S.C. § 2000e–3(a). Specifically, the defendant unlawfully discharged Sylvester Hudson, a black employee for opposing practices made unlawful by Title VII and because he had filed charges and assisted and participated in an investigation pursuant to this Title.

The Commission seeks injunctive relief, back pay and reinstatement of Sylvester Hudson in defendant's pension plan and such other relief as the Court feels necessary to remedy the effects of defendant's alleged illegal practices. St. Joe denied that it violated § 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–3(a), when it discharged Hudson.

The issue presented in this case is whether the Commission has shown by a preponderance of the evidence that St. Joe retaliated by firing its employee, Sylvester Hudson, because Hudson opposed acts made unlawful by Title VII of the Civil Rights Act. After careful review of the entire record in this case, the Court finds that St. Joe Container Company did violate § 704(a) of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–3(a) when it terminated Sylvester Hudson's employment with the company on March 15, 1979, and that its stated reason for the termination is pretextual.

The Commission, is a federal agency with authority to bring this action under the provisions of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(f)(1). The parties stipulated that all conditions precedent for bringing this action have been met. St. Joe is a Tennessee corporation doing business in Tennessee, with a plant in Memphis, Ten-

---

1. The correct corporate name of the defendant is now St. Joe Container Company.

nessee, where it is primarily engaged in the business of manufacturing paper products and where it employs more than fifteen employees.

Sylvester Hudson, a black male, was employed for approximately eight and one-half years by St. Joe. He was discharged by St. Joe on March 15, 1979. While employed at St. Joe, Hudson was involved in filing several charges of racial discrimination with the Commission against St. Joe. He filed a charge with the Commission in 1973, alleging racial discrimination in employment at St. Joe. He was one of the named plaintiffs in a racial discrimination class action filed against St. Joe pursuant to the 1973 charge. That class action was resolved by a consent order filed on August 25, 1975. Hudson received a financial settlement as a result of that consent decree. Hudson was the only named plaintiff in that class action still in defendant's employ in 1979.

A second charge was filed with the Commission by Hudson in February of 1979. The February charge alleged St. Joe refused to assign Hudson to a light duty position and retaliated against him for filing the 1973 charge when it discharged him on January 31, 1979. However, Hudson was reinstated by St. Joe with back pay on February 14, 1979. On the following day, February 15, 1979, Hudson was given a disciplinary layoff of five days, according to St. Joe, for deliberately stopping production.

St. Joe was asked to attend a fact finding conference with the Commission on March 15, 1979, to discuss Hudson's February, 1979, discrimination charge. St. Joe sent its representatives to the fact finding conference. Those in attendance on behalf of St. Joe were James Braud, General Manager of St. Joe's Memphis, Tennessee, plant, Fred Hartman, St. Joe's Regional Vice-President, and Robert McDonald, St. Joe's attorney. Hudson and his attorney were also present at that conference. The conference commenced around 10:00 a.m., March 15, 1979, and ended near noon on that date.

Hudson was discharged by St. Joe a few hours after the fact finding conference ended on March 15, 1979. Hudson was discharged shortly after Mr. Braud returned to the plant on the afternoon of March 15, 1979. Mr. Braud testified that he and the other company representatives at the fact finding conference went to lunch immediately after the conference and then returned to the plant around one or two in the afternoon. Hudson was notified of his discharge by Fred Alexander, his immediate supervisor, by telephone around two or three during the afternoon of March 15, 1979.

Hudson filed a third charge with the Commission on March 19, 1979, alleging his discharge by St. Joe on March 15, 1979, was retaliatory motivated. St. Joe, when requested to attend a fact finding conference in relation to Hudson's charge of retaliation, filed on March 19, 1979, stated its position in a letter to the Commission drafted by St. Joe's attorney as follows:

> Finally, as suggested to you in our telephone conversation last week, I doubt that the positions of the parties have changed since the last fact-finding conference, and I therefore question the advisability of having another fact-finding conference on this new charge. I seriously doubt that anything productive could come of such a conference, and I am most hesitant to subject myself and my clients to further abuse by Mr. Hudson's attorney in circumstances where his conduct cannot be controlled.

It is St. Joe's position that Hudson was discharged on March 15, 1979, not in retaliation for his having engaged in activity protected by Title VII but because he was insubordinate and failed to follow instructions of John Jackson, Plant Superintendent at St. Joe. As reflected by St. Joe's disciplinary records, Hudson's discharge was the only one resulting from insubordination and failure to follow instructions.[2]

2. Mr. Braud after going through disciplinary records of several employees during the trial, gave a very flexible definition of the term "in-

subordination" and stated the term embraced various types of conduct.

St. Joe asserts Hudson was discharged on March 15, 1979, for copying company production records. Hudson was involved in a series of incidents regarding copying of company records which began on March 7, 1979. Hudson testified that Jackson had told him prior to March 7, 1979, when he asked Jackson for a copy of the production report, that he could not give Hudson a copy and if he wanted a copy he would have to make his own. Hudson was observed making carbon copies of company production records on March 7, 1979, by Jackson. After some discussion with Braud and Gene Webb, Production Manager at St. Joe, Jackson asked Hudson why he was making carbon copies of production reports. Hudson replied he was doing so to prove that he was producing more than any other bundler at St. Joe. Jackson told Hudson he could not make copies of production reports. Hudson was not observed making carbon copies of production reports after March 7, 1979. The record reflects Hudson thought he was only instructed by Jackson not to make carbon copies of production reports.

Fred Alexander, Hudson's supervisor, testified that on March 13, 1979, he observed Hudson taking more time than normal to write a production report [3] and that when Hudson completed the production report, Hudson pulled something from under the report, folded it, and placed it in his pocket. Alexander had been told by Jackson on March 12, 1979, about the March 7, 1979, copying incident. Alexander did not question Hudson on March 13, 1979. Alexander testified that it occurred to him later that Hudson was probably making notes of a production report.

Alexander testified that, he again, on March 14, 1979, observed Hudson taking more time than usual to complete a production report. When Hudson completed the report, Alexander stated he saw Hudson pull something from under the report. At that time Alexander approached Hudson and asked Hudson what he had in his hand

and to display it. Alexander stated that when Hudson failed to respond he advised Hudson what he had in his hand was company property. Alexander testified the paper he observed in Hudson's hand had an identity tag and that some figures appeared on the paper. Hudson told Alexander the company's property was on the machine. However, Hudson testified that Alexander merely asked him for the company production report. Both parties admit that Hudson tore up the paper which he held in his hand and tossed it in a trash container. On March 15, 1979, Jackson was told of the incident involving Hudson by Alexander.

Jackson testified Alexander came to his office on the morning of March 15, 1979, with pieces of paper he said he had retrieved from a trash container which were thrown there by Hudson on March 14, 1979. Jackson stated he reassembled those pieces of paper, then compared it to the production report of March 14, 1979, and determined the figures on the paper matched the figures on the production report.

On March 15, 1979, Jackson went through the chain of command at St. Joe for a decision as to what action should be taken against Hudson.[4] The decision to terminate Hudson was not made until Braud returned from lunch which followed the fact finding conference held on March 15, 1979.

The case of *Sutton v. National Distillers Products Co.,* 445 F.Supp. 1319 (S.D.Ohio 1978), *aff'd,* 628 F.2d 936 (6th Cir.1980), delineates the requirements necessary to establish a *prima facie* case under 704(a) of Title VII, 42 U.S.C. § 2000e–3(a) as follows:

> [T]he employee must make a *prima facie* case by showing (1) that he engaged in a protected activity (such as filing an E.E. O.C. charge); (2) that the employer knew of this protected activity; (3) that he was subsequently discharged or subjected to other damages; and (4) that the employer had a retaliatory motive or that the tim-

---

**3.** It was Hudson's duty as bundler to prepare the production report.

**4.** The chain of command at St. Joe is as follows; (1) the general manager, (2) production manager, (3) plant superintendent, and (4) the supervisors.

ing of its action was such as to allow an inference of retaliation to arise. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge or other action. If a reasonable basis is shown, the burden shifts back to the employee, who has the opportunity to demonstrate by further evidence that the reasons assigned by the employer are pretextual.

*Sutton* at 1325–1326, citations omitted.

■ The Commission has established a *prima facie* case. Hudson was engaged in activity protected by Title VII. In February of 1979, Hudson filed a charge with the Commission against St. Joe. St. Joe knew Hudson had filed a charge with the Commission. The Commission requested St. Joe's presence at a fact finding conference to discuss the charge filed by Hudson. Hudson was discharged a few hours after the defendant's representative left the fact finding conference. The short time lapse between the fact finding conference and Hudson's discharge by St. Joe raises a very strong inference and leads the Court to find that St. Joe discharged Hudson in retaliation for his having filed a charge with the Commission and for subjecting the company to an investigation by the Commission. The fact that St. Joe's representatives at the conference concluded they had been subjected to abuse during the fact finding conference by Hudson's attorney strengthens the Court's conclusion that Hudson's termination was the result of retaliation by St. Joe.

■ Once a *prima facie* case has been established, the burden shifts to the defendant/employer, St. Joe, "to articulate a legitimate, non-discriminatory reason" for discharging Hudson. *Sutton* at 1325; *Texas v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). St. Joe's defense to this action is that Hudson was discharged for insubordination when he refused on March 14, 1979, to give Alexander the paper in his hand and for failing to follow instructions given to him by Jackson on March 7, 1979, not to copy company production reports.

■ Failure to follow instructions and insubordination are legitimate, non-discriminatory reasons for discharging an employee. If this articulated reason was St. Joe's actual and true reason for discharging Hudson, then no liability attaches under Title VII. St. Joe offers insubordination and failure to follow instructions as its true reason for discharging Hudson and relies on an arbitrator's decision which upheld the company's discharge of Hudson. This Court is not bound to accept conclusively the arbitrator's decision as representing the employer's true reason for discharging Hudson. *Becton v. Detroit Terminal of Consolidated Freightways,* 687 F.2d 140 (6th Cir.1982).

This Court must determine whether St. Joe's articulated reason for Hudson's discharge was the actual reason for his discharge. The resolution of the issue presented in this case centers on the Court's determination of St. Joe's intent and motive for discharging Hudson. One court confronted with this issue said:

[S]ection 704(a) is to be broadly interpreted and applied by Courts of the United States to protect zealously employees' rights under Title VII. (citations omitted). However, as in most cases where the Court is called upon to review the motive and intent behind an employment decision, the boundaries of the protection afforded to Section 704(a) plaintiffs and the equivalent duty imposed upon a Title VII employer cannot be measured precisely. Rather, the Court, in applying the statute to these facts, must utilize a common sense approach which takes into account the realities and complexities of the employer-employee relationship and determine whether Section 704(a) has been violated based on "reasonable inferences drawn from the totality of facts, the conglomerate of activities, and the entire web of circumstances presented by the evidence on the record as a whole."

*Jeffries v. Harris County Action Association, et al.,* 425 F.Supp. 1208, 1216, (S.D.Tex. 1977), *aff'd in part, vacated on other grounds,* and *remanded,* 615 F.2d 1025 (5th Cir.1980).

■ Plaintiff bears the burden of proving by a preponderance of the evidence that St. Joe's articulated reason is not the actual reason for Hudson's discharge. In other words, plaintiff must show the articulated reason is a pretext. A Court determines pretext based on the "objectivity, sincerity, and honesty of the witnesses." *Long v. Ford Motor Co.,* 496 F.2d 500, 506 (6th Cir.1974). Retaliatory motive can be established by direct or circumstantial evidence. *Sutton, supra.*

With this background, the Court must analyze the evidence to determine defendant's motive.

James A. Braud, General Manager, St. Joe Container Company, Memphis, Tennessee, testified that his plant has a collective bargaining agreement with its employees. The company also maintains an employee retirement plan. Employees are not required to contribute to the plan. Employee rights in the plan vest in 10 years.

Mr. Braud testified that a grievance procedure is part of the collective bargaining agreement. He said St. Joe has two disciplinary policies. One policy is in writing, and the other is an unwritten policy. He testified one disciplinary policy is in writing and is basically designed to govern employee work attendance. He said three occurrences within 30 days can be grounds for dismissal. The progressive attendance discipline policy is administered in the following sequence:

1) Oral contact report
2) Formal letter of reprimand
3) Three day layoff
4) Five day layoff
5) Discharge

This written policy is posted on an employee bulletin board and also in the employee clock-out island. The progressive discipline policy, basically applicable to attendance, is used by the company frequently when administering company factory rules. There are three sets of printed rules; (1) the company factory rules, (2) the general safety rules, and (3) the disciplinary policy applicable to attendance. The collective

bargaining agreement between the company and the employees' union at St. Joe requires posting of all company factory rules and a copy of such rules must be furnished by the company to union stewards.

The second policy is an unwritten disciplinary policy which, Mr. Braud said, allows management flexibility in dealing with employee misconduct.

Mr. Braud admitted that Mr. Hudson was the only employee discharged for insubordination between January, 1975, and January, 1982. He maintained that Hudson was discharged for violating company rules relating to copying of company production records.

Mr. Braud also admitted to some feeling about the conduct of Hudson's attorney during the EEOC fact finding conference. He admitted that "we" were not pleased with Hudson's attorney's conduct but said it was "nothing that disturbed us."

The Commission demonstrated to the Court that other St. Joe employees who committed disciplinary acts were not discharged for a first offense as was Hudson. Those employees were identified as Calvin Young, Robert Brownlee, Fred Wade, Earl Shelton, Clarence L. Boone and James Prince, Jr.

All of defendant's management personnel who testified during the trial indicated the company's rule forbidding employees copying production reports was an extremely important rule. They stated the rule had been in existence at the company for some time. The Court cannot determine from the record exactly when the policy forbidding copying company production reports became effective. The testimony of Jackson indicated the rule became effective late in 1974 or 1975. The rule forbidding copying of company production reports which the company deems to be a very important rule has never been reduced to writing. Instead, company officials testified the employees of the company were informed of the existence of the rule orally. Jackson testified he orally told all of the employees

who report to him of the rule forbidding copying of production reports when it first became effective. Jackson stated he never reiterated the rule because the necessity never arose and because no new employees were added to his work force. Thus restatement of the rule was not necessary. Braud testified that all management personnel at St. Joe informed their employees in the same manner that Jackson did, orally.

St. Joe has no written policy to aid management personnel in enforcing the company factory rules. As stated earlier the chain of command at St. Joe is consulted when infractions of the company rules occur. No decision was made in regard to Hudson on March 7, 1979, or March 15, 1979, until the chain of command was consulted. Jackson as Plant Superintendent testified he neither decided or recommended what discipline should be administered in a particular case. The discipline to be administered is something discussed by those in command at St. Joe and then a decision is made.

The way discipline decisions were made at the company is certainly illustrated by the facts of the instant case. No formal disciplinary action was taken against Hudson on March 7, 1979, as noted in his personnel record. Hudson was instructed not to make carbon copies of the production reports until after Jackson had informed Braud and Webb. Nor did Alexander take any disciplinary action against Hudson on March 13 or 14, 1979, even though Alexander was fully aware of the incident of March 7, 1979. Hudson was not discharged by the company for violation of this alleged important company rule until Braud returned to the plant on March 15, 1979, following the EEOC fact finding conference.

The evidence in the record shows that Mr. Braud and the other company representatives attending the EEOC fact finding conference on March 15, 1979, left that conference greatly disturbed. They apparently resented the way they had been treated by Hudson's attorney. While disturbed and possessed with feelings of deep resentment, these company officials left the EEOC conference, went to lunch and thereafter, within a few hours after the EEOC conference ended, made a decision to terminate and discharge Mr. Hudson from his employment with St. Joe Container Company. When all the relevant facts and circumstances are considered in the context of this case, this Court finds compelling its conclusion that St. Joe's articulated reason for discharging its employee Hudson, who had been employed by St. Joe approximately eight and one-half years, is pretextual. Based upon the facts, there is simply no other reasonable conclusion this Court can make. This asserted rule against copying company reports although deemed important by the company had not been reduced to writing. No management employee of defendant who testified in this trial could recall any other company factory rule which is not in writing. Other employees who violated company rules were for the most part afforded progressive discipline, while Hudson was discharged without progressive discipline for this alleged offense.

The court in *Sutton* stated the problem in retaliation cases lies in the burden of proof. There are four possible standards which arguably apply in such a case:

> whether the filing of a charge (1) played any part in the challenged action, no matter how remote or tangential, (2) played a substantial factor in the challenged action, (3) was the principal, though not the sole reason, for the employer's action, (4) or whether or not the adverse employment action would have taken place had there been no protected activity.

*Sutton* at 1328.

*Sutton* did not adopt a particular standard of proof which applies in retaliation cases nor did the Sixth Circuit Court of Appeals when it affirmed *Sutton*. The *Sutton* Court applied all four tests to hold the plaintiff there had not established that the employer's action was the result of retaliation.

This Court has considered all the standards which arguably apply to the causation

**442**

issue and finds the Commission has shown by preponderate evidence that Hudson's discharge was motivated by retaliation under either of the four standards and finds defendant's stated reason pretextual. The filing of the EEOC charge was a substantial factor in St. Joe's decision to terminate Hudson. While filing of the charge arguably may not have been the sole reason for St. Joe's actions, the Court finds that Hudson would not have been discharged if he had not filed the EEOC charge and thereby subjected the company to an EEOC investigation. The Court cannot ignore the fact that Hudson was discharged within a few hours after the EEOC fact finding conference ended. It seems to the Court that absent the charge Hudson would at most have been subjected to St. Joe's progressive discipline policies. The Court cannot reasonably conclude that St. Joe's decision to terminate Hudson was free of a retaliatory animus.

For all the reasons stated in this opinion, the Court concludes that St. Joe did discharge Sylvester Hudson in violation of Title VII of the Civil Rights Act of 1964, as amended.

By way of remedy, the Court finds that Sylvester Hudson is entitled to receive back pay from St. Joe. § 706(g) of Title VII, 42 U.S.C. § 2000e–5(g). Hudson, after his discharge from St. Joe, sought employment elsewhere. The record reflects that he sought employment at approximately fifty businesses. He gained employment with Unarco in October, 1979. He was laid off by Unarco in August of 1981. Hudson was hired by Bemis Company in October, 1981. He is presently employed by Bemis Company. Though he was laid-off by Bemis in April of 1982, he was called back to work in September of 1982.

■ Plaintiff seeks a back pay award of $10,452.59 for Hudson. St. Joe at trial made no attempt to refute plaintiff's calculations or put on any proof to show Hudson failed to mitigate his damages. The burden was upon St. Joe to explain or disprove Hudson's asserted damages as supported by the record. *Peel v. Florida Dept. of Trans-*

*portation,* 500 F.Supp. 526, 528 (N.D.Fla. 1980); *Sias v. City Demonstration Agency,* 588 F.2d 692, 696 (9th Cir.1978). St. Joe has not met this burden.

■ The Court awards Sylvester Hudson back pay in the sum of $10,452.59, subject to appropriate deductions, plus interest computed at the adjusted prime interest rate utilized by the Internal Revenue Service. *EEOC v. Wooster Brush Co.,* 523 F.Supp. 1256, 1268 (N.D.Ohio 1981); *EEOC v. Pacific Press Publishing Association,* 482 F.Supp. 1291, 1319–1320 (N.D.Cal.1979).

■ St. Joe must also make the necessary monetary contributions up to the appropriate date necessary to restore Hudson in St. Joe's pension plan and to vest his rights in the pension plan. The Court finds reinstatement of Hudson to his former position with defendant is not appropriate. Mr. Hudson testified during the trial he did not wish to be reinstated in his former employment with St. Joe.

Further, the Court will enter an order permanently enjoining St. Joe Container Company from any further violations of Title VII of the Civil Rights Act of 1964 as amended.

The Court directs the Equal Employment Opportunity Commission to prepare and present to the Court an appropriate judgment for entry in this case within 15 days from the date of this opinion.